IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GLENN N. KARSTADT, JR. and<br>ERNA KARSTADT,<br><br>         Plaintiffs,<br><br>v.<br><br>TIMOTHY D. HENDRICKS,<br>TIM HENDRICKS HOMES, and<br>CITY OF PARK CITY,<br><br>         Defendants. | **CIVIL ACTION**<br><br>No. 07-1325-MLB |

**MEMORANDUM AND ORDER**

This matter comes before the court on motions to dismiss:

1. Defendants Timothy Hendricks and Tim Hendricks Homes ("Hendricks") filed a motion to dismiss on May 19, 2008 (Doc. 6); and

2. Defendant City of Park City ("Park City") filed a motion to dismiss on July 2, 2008 (Docs. 11, 12).

Plaintiff Glenn Karstadt filed a response on July 8, 2008 (Doc. 13); plaintiff Erna Karstadt has not responded. Defendant Park City filed a reply. (Doc. 14.) The motions are now ripe for consideration.

Defendants' motions are GRANTED for the reasons stated more fully herein.

**I.  FACTS**

Plaintiffs' complaint purports to state a claim for relief under the civil federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). (Doc. 1 at 3.) Plaintiffs allege the following in their complaint:

> Bill Ball former Park City police chief stated that Tim Hendricks paid for and had the panelling installed on the front of the police department.

> This was a bribe so that Park City would keep Tim Hendricks on the Park City Police Reserve, Serving on the Park City court, Useing his influence to get Glenn Karstadt convicted on a fauls charge of distrubing the peace [sic throughout].

Plaintiffs also specifically identify bribery as the basis for their RICO claim, in an additional section of their complaint. (Doc. 1 at 3.)

Plaintiffs also attach handwritten notes to their complaint that state: 1) "Park City harrased us by have Dennis Rader deliver letters like the one enclosed [sic];" 2) "Dee Stuart has threatened Glen Karstadt with for slander or libel [sic];" and 3) "Mrs Karstadt was swindled by Tim Hendricks when he failed to put Acme bricks on her home." (Doc. 1 at 6.) In addition, plaintiffs attach to their complaint:

1. A letter addressed to Glen Karstadt, dated September 4, 1997, signed by Park City's "zoning administrator," Jack Whitson. The letter is also purportedly signed by Dennis Rader as having "served" it and by Glen Karstadt as having "received" it.

   The letter discusses certain zoning regulations and discusses areas Karstadt's home may be deficient.

   A handwritten note appearing at the top of the letter states: "Park City abused us."

2. A letter addressed to Glenn Karstadt, dated May 15, 2006, signed by "Dee Stuart[,] Mayor."

   The letter states that Park City has no plans to change a particular intersection; that any problems with Tim Hendricks should be taken up with Hendricks, rather than "risking a lawsuit for slander, or a criminal prosecution for libel;" and that Karstadt should be "very careful about attempting to blackmail the City."

   A handwritten note appears at the bottom of the letter which states: "Dee Stuart dosen't [sic] care about the elderly."

-2-

> 3. An apparent inventory list, with a header from Tim Hendricks Homes, that has a handwritten note at the top that states: "Tim Hendricks didn't put on the Acme Brick on our Home."

(Doc. 1 at 7-9.) These attachments are apparently intended to be evidence of plaintiffs' RICO claim based on bribery from Hendricks to Park City.

## II. ANALYSIS

The standards this court must utilize upon a motion to dismiss are well known. To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon this court's consideration. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs have not alleged facts sufficient to satisfy any of the elements necessary for a civil RICO claim. (Docs. 6, 11, 12); Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"). Park City attaches to its motion a March 2, 1999 journal entry from the Park City Municipal Court,

which finds Glenn Karstadt guilty of disorderly conduct. (Doc. 12 Exh. A); see Pace v. Swerdlow, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (citing case authority for proposition that district court may take judicial notice of state proceedings on a motion to dismiss without converting to a motion for summary judgment). The only response filed, from Glen Karstadt, states, in its entirety:

> Dear District Court
>
> I apeal to you not to dismis this case.
>
> Park City used BTK as ist's enforcer.
>
> Tim Hendricks used Park City to get me convicted of this X Exhibit A.
>
> They are working together with their Att. Is Park City paying for their Att?
>
> I know that Park City is corrupt.
>
> You can help me clean up this corrupt City.
>
> We need a clean City.
>
> Tim Hendricks dosn't live here he lives in Andover.
>
> Pleas Help. Glen Karstadt [sic throughout].

(Doc. 13.) The response also attaches the March 2, 1999 Park City journal entry, with handwritten notes that state: "Hendricks corrupted Park Cities [sic] Court" and "this women [sic] lied in court." (Doc. 13 at 2-4.) Plaintiff Erna Karstadt has never responded to either motion to dismiss.

Section 1962(c) of RICO makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

-4-

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must allege that defendants: (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006).

The first element of plaintiffs' RICO claim is defendants' participation in an enterprise. An "enterprise" is defined under RICO § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." "Person" is defined by RICO § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property."

Given an expansive reading, the alleged enterprise defendants participated in is the relationship between Hendricks and Park City. However, both Hendricks and Park City are also alleged to be "persons" participating in the "enterprise." The Tenth Circuit has clearly held that a "person violating § 1962(c) must be distinct from the "enterprise." See Bd. of County Comm'rs v. Liberty Group, 965 F.2d 879, 885 (10th Cir. 1992) ("[U]nder § 1962(c) it is required that the "person" and the "enterprise" engaged in racketeering activities be different entities."). Here, plaintiffs allege Hendricks and Park City are both members of the enterprise and persons conducting the pattern of racketeering activity. "This is not possible under § 1962(c) because a "person" cannot be employed by or associated with an "enterprise" of which it is a member." Monarch Normandy Square Partners v. Normandy Square Assoc.s Ltd., 817 F. Supp. 899, 906 (D.

Kan. 1993).

In addition, plaintiffs failed to allege facts showing a pattern of racketeering activity. Racketeering activity is broadly defined by the statute. See 18 U.S.C. § 1961(1) (listing offenses included in definition). "RICO specifically defines 'racketeering activity' as any act that violates specified state and federal crimes, including mail fraud, wire fraud, and bank fraud. The various acts of racketeering activity described in the statute are often referred to as 'predicate acts' because they form the basis for liability under RICO." BancOklahoma Mortgage Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1102 (10th Cir. 1998) (internal citations omitted).

A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); see also Deck v. Engineered Laminates, 349 F.3d 1253, 1257 (10th Cir. 2003) (stating that a "pattern of racketeering activity" must include at least two predicate acts). Furthermore, "[i]n order to satisfy RICO's pattern requirement, [a plaintiff] must show two elements--'a relationship between the predicates' and 'the threat of continuing activity.' Interpreting RICO's legislative history, the Supreme Court stated that the pattern element is not satisfied by a showing of relatedness alone. It must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." Duran v. Carris, 238 F.3d 1268, 1271 (10th Cir. 2001) (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239

(1989)).

The alleged racketeering activity is bribery.[1]  (Doc. 1 at 3.) Bribery is included in the list of prohibited racketeering activities, but plaintiffs fail to state any facts sufficient to meet the elements of a bribery claim, let alone the "pattern" requirement of two related predicate acts and a threat of continuing activity.

This is so because bribery requires a gift to a public officer or employee; plaintiffs allege only a gift to a municipality. See Kan. Stat. Ann. § 21-3901(a) ("Bribery is: (a) Offering, giving or promising to give, directly or indirectly, to any person who is a public officer, candidate for public office or public employee any benefit, reward or consideration to which the person is not legally entitled with intent thereby to influence the person with respect to the performance of the person's powers or duties as a public officer or employee."); 18 U.S.C. § 201(b)(1) (stating that a person who "directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity" with intent to influence is guilty of bribery).

Plaintiffs allege only that Hendricks bribed Park City so that Park City would keep him on the "police reserves," serving on court, and getting Glenn Karstadt "falsely convicted," and that plaintiffs were informed of this alleged bribery by "Bill Ball former Park City

---

[1] Plaintiffs do not specify whether they are alleging bribery under a federal statute or a state statute.

-7-

police chief." Plaintiffs do not allege any public officer or public employee involvement in the alleged bribery. Therefore, plaintiffs fail to state the facts necessary to support the "predicate act" requirement of the civil RICO claim. See Tal v. Hogan, 453 F.3d 1244, 1263-64, 1267 (10th Cir. 2006) (discussing requirement of the federal anti-bribery statute that the bribe be directed to a public official; also stating that "violations of state bribery laws can serve as predicate acts under RICO" as long as the violation is properly pleaded).

For all these reasons, plaintiffs have failed to state a claim for which relief may be granted. See Dalton v. City of Las Vegas, No. 07-2216, 2008 WL 2372695, at *2 (10th Cir. June 12, 2008) (upholding dismissal of civil RICO claim for failing to state a claim under Rule 12(b)(6) where the plaintiff failed to allege facts sufficient to find an enterprise or predicate acts); Deck v. Engineered Laminates, 349 F.3d 1253, 1255 (10th Cir. 2003) ("RICO provides certain advantages to plaintiffs, but it also presents substantial hurdles for plaintiffs to overcome to establish a proper claim."). Defendants' motions under Rule 12(b)(6) must be granted.

### III.  **CONCLUSION**

Defendants' motions to dismiss (Docs. 6, 11) are GRANTED for the reasons stated more fully herein. The clerk is directed to enter judgment for the defendants pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion

for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this __18th__ day of July, 2008, at Wichita, Kansas.

                                         s/Monti Belot  
                                         Monti L. Belot  
                                         UNITED STATES DISTRICT JUDGE